■ CHEMFAB CORPORATION et al., Respondents, v INTEGRATED LINER TECHNOLOGIES, INC., et al., Appellants. [693 NYS2d 752] —Mercure, J. Appeal from an order of the Supreme Court (Ceresia, Jr., J.), entered April 1, 1998 in Rensselaer County, which denied defendants' motion for summary judgment dismissing the complaint.

Defendants William De Laney, Paul Petrosino and Alan Gee are former employees of Loctite Corporation and Loctite VSI, Inc. (hereinafter collectively referred to as Loctite), all having served as managers at Loctite's Canton Bio-Medical Division facility in the Town of Poestenkill, Rensselaer County, a manufacturer and distributor of septa.* Plaintiffs' interest in this action is as Loctite's successor in interest with regard to the Canton Bio-Medical Division and assignee of Loctite's claims against defendants.

De Laney and Petrosino lost their jobs with Loctite on June

---

* Septa are small laminated disks of Teflon and silicone used as cap liners in the pharmaceutical trade.

4, 1993 as the result of an overall staff reduction. On July 22, 1993 they incorporated defendant Integrated Liner Technologies, Inc. (hereinafter ILT) for the purpose of manufacturing septa. Effective October 1, 1993, ILT leased manufacturing facilities at Rensselaer Polytechnic Institute's incubator program and the following month began selling septa to La-Pha-Pack, a German company which had been a significant customer of Loctite's during 1992 and 1993. In November 1993, Loctite began investigating defendants' possible misuse of confidential information and claims to have been made aware that its confidential documents had been observed at the incubator facility utilized by ILT. In March 1994, ILT learned of a letter written by Gee (still employed by Loctite at that point) to La-Pha-Pack's president, Werner Reifferscheidt, soliciting a business partnership between ILT and La-Pha-Pack and requesting financial assistance for ILT. Gee was terminated from his employment effective March 15, 1994. One month later, he was hired by ILT and obtained a one-third interest in the business. In November 1994, Reifferscheidt became a 10% shareholder of ILT.

Plaintiffs thereafter commenced this action alleging (1) Gee's breach of a fiduciary duty to Loctite, (2) all defendants' misappropriation of trade secrets, and (3) all defendants' unfair competition. Following a stipulated inspection of both manufacturing facilities by an independent expert who concluded that ILT possessed a trade secret that had not been appropriated from plaintiffs or Loctite, plaintiffs withdrew so much of their second cause of action as alleged that defendants misappropriated trade secrets and proprietary materials and used them in the manufacture of competing products. Thereafter, defendants moved for summary judgment dismissing the complaint upon the grounds that Gee did not violate his fiduciary duty to Loctite and that defendants properly acquired customer names and did not wrongfully secure a competitive advantage over plaintiffs. Supreme Court denied defendants' motion and defendants appeal.

Initially, we conclude that Supreme Court did not err in denying defendants' summary judgment motion with regard to plaintiffs' first cause of action, which alleges that Gee breached his duty of loyalty to Loctite, failed to perform the duties of his employment and assisted ILT, his employer's competitor. It is settled law that an employee is prohibited from acting in any manner inconsistent with his or her employment and must exercise good faith and loyalty in performing his or her duties (see, Western Elec. Co. v Brenner, 41 NY2d 291, 295; Lamdin v

*Broadway Surface Adv. Corp.*, 272 NY 133). In addition, while an employee may secretly incorporate a competing business prior to departing, the employee may not use his or her principal's time, facilities or proprietary secrets to build the competing business (*see, Maritime Fish Prods. v World-Wide Fish Prods.*, 100 AD2d 81, *appeal dismissed* 63 NY2d 675). In our view, Gee's January 21, 1994 letter to Reifferscheidt, which was discovered on Gee's computer at the Canton Bio-Medical Division facility, creates an arguable question of fact as to whether Gee was utilizing Loctite's time and resources to further the interests of its competitors.

We are of a different view, however, regarding the second and third causes of action. As limited by the parties' submissions in Supreme Court and the briefs on this appeal, the sole "trade secret" or "confidential information" forming a predicate for those causes of action is the identity of La-Pha-Pack as a potential purchaser of septa. However, the record is devoid of competent evidence to support a finding that the identity of La-Pha-Pack as an actual or prospective purchaser of septa constituted a trade secret. To the contrary, in view of the uncontradicted evidence that La-Pha-Pack could be readily identified as such through information distributed at trade shows and conferences, neither the timing of ILT's dealings with La-Pha-Pack, Gee's contact with Reifferscheidt, nor Gee's admission that he knew the names of Loctite's largest customers suffice to raise any genuine factual issues (*see, Reed, Roberts Assocs. v Strauman*, 40 NY2d 303, 308; *Amana Express Intl. v Pier-Air Intl.*, 211 AD2d 606). In any event, we also agree with defendants' argument that an employee's knowledge of the identity of but one of his employer's customers cannot be considered a "trade secret" and that, absent an express noncompetition agreement, an action founded upon a postemployment solicitation of such a customer cannot stand as a matter of law.

Next, having concluded that defendants took no confidential customer information from Loctite, plaintiffs' third cause of action alleging unfair competition must also fail. There is simply no competent evidence in the record to support a finding that defendants or any of them misappropriated any confidential information (*see, Advanced Magnification Instruments v Minuteman Opt. Corp.*, 135 AD2d 889, 891). Further, to the extent that the third cause of action alleges defendants' tortious interference with Loctite's prospective business relations, it must also fail. Notably, the record is devoid of evidence to support a finding that, but for defendants' wrongful conduct,

plaintiffs would have consummated a contract with La-Pha-Pack (*see, Maas v Cornell Univ.*, 245 AD2d 728, 731; *Jabbour v Albany Med. Ctr.*, 237 AD2d 787, 790; *Brown v Bethlehem Terrace Assocs.*, 136 AD2d 222, 225). To the contrary, the uncontradicted evidence is that La-Pha-Pack severed its business relationship with Loctite because of its continued dissatisfaction with the quality of Loctite's service and products. In fact, at the time of Gee's January 21, 1994 letter to Reifferscheidt (which provides the only concrete basis for plaintiffs' claim of "wrongful means"), La-Pha-Pack had already been purchasing septa from ILT for several months.

We conclude that, in the absence of a triable question of fact on plaintiffs' second and third causes of action, Supreme Court should have granted summary judgment dismissing them.

Cardona, P. J., Peters, Spain and Carpinello, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied defendants' motion for summary judgment with regard to the second and third causes of action of the complaint; motion granted to that extent, partial summary judgment awarded to defendants and said causes of action are dismissed; and, as so modified, affirmed.